# IN THE UNITED STATED DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| NEAL MCDONNELL, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. 7:19-CV-00188 |
| JENNIFER GLOVER; | § | |
| | § | |
| OFFICER ESTEBAN FUENTES OF THE | § | |
| MCALLEN POLICE DEPARTMENT, IN HIS | § | JURY TRIAL DEMANDED |
| OFFICIAL AND PERSONAL CAPACITIES; | § | |
| | § | |
| HIDALGO COUNTY, TEXAS; | § | |
| | § | |
| CITY OF MCALLEN, TEXAS; | § | |
| | § | |
| BERNALILLO COUNTY, NEW MEXICO; | § | |
| | § | |
| BERNALILLO COUNTY, NEW MEXICO | § | |
| SHERIFF MANUEL GONZALES III, IN HIS | § | |
| INDIVIDUAL AND OFFICIAL CAPACITIES; | § | |
| | § | |
| ONE OR MORE UNKNOWN | § | |
| CONSPIRATORS AT THE BERNALILLO | § | |
| COUNTY, NEW MEXICO SHERIFF'S | § | |
| OFFICE. IN THEIR INDIVIDUAL AND | § | |
| OFFICIAL CAPACITIES; | § | |
| | § | |
| OFFICER SALAZAR OF THE MCALLEN | § | |
| POLICE DEPARTMENT, IN HIS OFFICIAL | § | |
| AND PERSONAL CAPACITIES; | § | |
| | § | |
| OFFICER RODRIGUEZ OF THE MCALLEN | § | |
| POLICE DEPARTMENT, IN HIS OFFICIAL | § | |
| AND PERSONAL CAPACITIES; | § | |
| | § | |
| MCALLEN CHIEF OF POLICE VICTOR | § | |
| RODRIGUEZ, IN HIS PERSONAL AND | § | |
| OFFICIAL CAPACITIES; | § | |
| | § | |
| ONE OR MORE UNKNOWN | § | |

CONSPIRATORS AT THE MCALLEN          §
POLICE DEPARTMENT, IN THEIR          §
INDIVIDUAL AND OFFICIAL CAPACITIES;  §
                                     §
HIDALGO COUNTY SHERIFF J.E.          §
"EDDIE" GUERRA , IN HIS INDIVIDUAL   §
AND OFFICIAL CAPACITIES;             §
                                     §
ONE OR MORE UNKNOWN                  §
CONSPIRATORS AT THE HIDALGO          §
COUNTY, TEXAS SHERIFF'S OFFICE, IN   §
THEIR INDIVIDUAL AND OFFICIAL        §
CAPACITIES;                          §
                                     §
    DEFENDANTS.  §
                                     §

---

## PLAINTIFF'S ORIGINAL COMPLAINT
## AND
## JURY DEMAND

---

TO THE HONORABLE COURT:

COMES NOW, Neal McDonnell, Plaintiff, and for cause, would file this, his *Original Complaint* against Jennifer Glover; Hidalgo County, Texas; City of McAllen, Texas; Bernalillo County, New Mexico; Bernalillo County, New Mexico Sheriff Manuel Gonzales III, in his official and personal capacities; one or more unknown conspirators at the Bernalillo County, New Mexico Sheriff's Office in their official and personal capacities; Officer Esteban Fuentes of the McAllen, Texas Police Department, in his official and personal capacities; Officer Salazar of the McAllen, Texas Police Department, in his official and personal capacities; Officer Rodriguez of the McAllen, Texas Police Department, in his official and personal capacities; McAllen, Texas Chief of Police Victor Rodriguez, in his official and personal capacities; one or more unknown conspirators at the McAllen, Texas Police Department, in their official and personal

capacities; Hidalgo County, Texas Sheriff J.E. "Eddie" Guerra, in his official and personal capacities; one or more unknown conspirators at the Hidalgo County, Texas Sheriff's Office in their official and personal capacities; Hidalgo County, Texas District Attorney Ricardo Rodriguez, in his official capacity alone; and in support thereof would respectfully show the Court the following:

## I. INTRODUCTION

1.  In the summer of 2016, Neal McDonnell was living in Albuquerque, New Mexico. He was about to be promoted to the position of Chief Executive Officer of a startup computer services firm, weeks away from becoming engaged to be married, and working on rebuilding his relationship with his 8-year-old daughter who was living with his ex-wife, Jennifer Glover, in McAllen, Texas.  McDonnell's his life was destroyed, however, when he was incarcerated for six months on a false charge of sexual abuse filed by Glover and wrongfully prosecuted by Officer Esteban Fuentes and the other Defendants.

2. In October 2016, McDonnell traveled to McAllen to visit his daughter, Mirna ("Mirna" is a pseudonym used by forensic investigators to protect the identity of McDonnell's daughter) for six days, and, at the invitation of his ex-wife, Jennifer Glover, stayed in a spare room in Glover's apartment.  Glover and McDonnell had divorced in 2009.

3. The visit went well, with his daughter asking when he could visit again, and Glover and Glover's mother saying they'd never seen Mirna so happy.  Mirna also told her mother she was looking forward to McDonnell visiting again, and called or texted McDonnell several times after he left.

4. Soon after returning to Albuquerque, however, McDonnell posted a picture of his

fiancé and him on his Facebook account announcing his engagement.  Within days, Glover filed a false police report with the McAllen Department of Public Safety falsely alleging that McDonnell had sexually molested his daughter during his visit.

5. The matter was first referred to the McAllen Police Department unit specializing in sexual crimes against minors.  That unit declined to take up the case, apparently finding the charges to be implausible.

6. That is when Officer Esteban Fuentes of the McAllen Police Department took over the case and began pursuing McDonnell as if he had a personal vendetta against him.  Fuentes seemed driven from the moment he took up the case to ensure that Glover's attempt at revenge against McDonnell for getting engaged was carried out.

7. Fuentes not only failed to perform an adequate investigation, but he also manipulated evidence, withheld exculpatory evidence, and created false evidence against McDonnell.  Fuentes, Glover, and their co-conspirators also caused McDonnell to be arrested and extradited to McAllen from Albuquerque in violation of normal procedure, and, once McDonnell was released, blocked McDonnell's efforts to file a criminal complaint against Glover for filing a false police report.

8. Following his arrest McDonnell was falsely charged with four counts of sexually assaulting of his own minor daughter and was wrongfully held in the Hidalgo County jail for almost six months.  During his incarceration he was never questioned by Fuentes or any other officer.  In addition to the four known felony counts charged against McDonnell, there was a fifth "secret felony charge" filed against him under a different cause number, for which he was not informed of his rights or allowed access to counsel.

9. All the charges against McDonnell were eventually dropped, although he was held in

the Hidalgo County Jail for three additional days because of the secret felony charge.  At the pre-trial hearing, the Court told the Assistant District Attorney's that "you really need to read the file before bringing a case like this," and then, after apologizing to McDonnell for "wasting five months of your life" the Court dismissed all charges.

10. Despite the dismissal and apology, these violations of McDonnell's constitutional and civil rights had a devastating impact on his life.  McDonnell lost his job and his promotion; was evicted from his apartment; had his car repossessed; had his engagement broken by his fiancé; and suffered the emotional and physical  torment of being in an open jail population in Hidalgo County with the charge of child sexual assault filed against him.

11. McDonnell brings this action under 2 U.S.C. § 1983, along with state law claims, to address this conspiracy to violate his civil rights through Glover's and Fuentes' false accusations, manipulation of evidence and the justice system, and the subsequent attempts to cover up any wrongdoing.

## II. Parties

12. Plaintiff Neal McDonnell is a resident of Bernalillo County, New Mexico, and may be served through his attorney of record at the address below.

13. Defendant Jennifer Glover is an individual residing in Hidalgo County, Texas and may be served with process at 1901 North 2nd St., Apt. 608, McAllen, Texas, 78501, or wherever she may be found.  The clerk is requested to issue citation and that service be effectuated.

14. Defendant Officer Esteban Fuentes of the McAllen Police Department, in his individual and official capacities, is a resident of Hidalgo County, Texas, and may be served with process at 1601 N. Bicentennial Blvd., McAllen, Texas 78501. The clerk is requested to issue

citation and that service be effectuated.

15. Defendant City of McAllen is a duly incorporated home-rule municipality in the State of Texas and may be served with process by serving McAllen Mayor Jim Darling at 1300 Houston Avenue, City Hall, 2nd Floor, McAllen, Texas, 78501.  The clerk is requested to issue citation and that service be effectuated.

16. Defendant Bernalillo County, New Mexico, a county government entity in the State of New Mexico, may be served with process by serving the County Clerk of Bernalillo County, New Mexico, Linda Stover, at PO Box 542, Albuquerque, NM 87103-0542.  The clerk is requested to issue citation and that service be effectuated.

17. Defendant Bernalillo County, New Mexico Sheriff Manuel Gonzalez III, in both his individual and official capacities, may be served with process at the Bernalillo County Sheriff's Office, 400 Roma NW, Albuquerque, New Mexico 87102.  The clerk is requested to issue citation and that service be effectuated.

18. Defendant Hidalgo County, Texas, a county government entity, may be served with process by serving County Judge Richard Cortez at 100 E. Cano, Second Floor, Edinburg, TX 78539. The clerk is requested to issue citation and that service be effectuated.

19. Defendant Officer Salazar of the McAllen Police Department, in his individual and official capacities, is a resident of Hidalgo County, Texas, and may be served with process at 1601 N. Bicentennial Blvd., McAllen, Texas 78501. The clerk is requested to issue citation and that service be effectuated.

20. Defendant Officer Rodriguez of the McAllen Police Department, in his individual and official capacities, is a resident of Hidalgo County, Texas, and may be served with process at 1601 N. Bicentennial Blvd., McAllen, Texas 78501. The clerk is requested to issue citation and

that service be effectuated.

21. Defendant McAllen Chief of Police Victor Rodriguez in his individual and official capacities, is an individual residing in Hidalgo County, Texas, and may be served with process at 1601 N. Bicentennial Blvd., McAllen, Texas 78501. The clerk is requested to issue citation and that service be effectuated.

22. Defendant Hidalgo County Sheriff J. E. "Eddie" Guerra, in his individual and official capacities, is an individual residing in Hidalgo County Texas, and may be served with process at the Hidalgo County Sheriff's Office, 711 El Cibolo Road, Edinburg, Texas 78541.  The clerk is requested to issue citation and that service be effectuated.

23. Defendant Hidalgo County District Attorney Ricardo Rodriguez, in his official capacity only, is an individual residing in Hidalgo County, Texas, and may be served with process at The Office of the Criminal District Attorney, 100 E. Cano, Edinburg, Texas 78539. The clerk is requested to issue citation and that service be effectuated.

### III. Jurisdiction

24. Jurisdiction is conferred by 28 U.S.C. § 1343, which provides for original jurisdiction of this Court in suits authorized under 42 U.S.C. § 1983, to redress the deprivation under color of state law, statue, ordinance, regulation, custom of usage of any right, privilege or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens or all persons within the jurisdiction of the United States.

### IV. Bases of Liability

25. All of the actions or omissions of the Defendants Fuentes and his co-conspirators

took place under color of state law pursuant to, acting upon, and in concert with the policies, practices, procedures, patterns, decisions, instructions, orders, and customs of Defendants the City of McAllen, Texas; Hidalgo County, Texas; Bernalillo County, New Mexico; the Bernalillo County, New Mexico Sheriff's Office; the McAllen Police Department; and the Hidalgo County Sheriff's Office.

26. Defendants are liable for damages caused by Fuentes and his co-conspirators' intentional or wrongful or reckless or negligent acts or omissions while Glover, Fuentes and their co-conspirators were acting under color of state law and were acting within the course and scope of their employment with the Defendants the City of McAllen, Texas; Hidalgo County, Texas; Bernalillo County, New Mexico; the Bernalillo County, New Mexico Sheriff's Office; the McAllen Police Department; and the Hidalgo County Sheriff's Office.

27. All of these acts or omissions took place under circumstances where Defendants the City of McAllen, Texas; Hidalgo County, Texas; Bernalillo County, New Mexico; the Bernalillo County, New Mexico Sheriff's Office; the McAllen Police Department; the Hidalgo County Sheriff's Office; Fuentes, and the co-conspirators are liable as governmental entities or sworn law enforcement officers in the State of Texas or the State of New Mexico.  Defendants' liability is based upon the following allegations, all of which demonstrate patterns of behavior and deliberate indifference to the issues raised and to the constitutional rights of citizens, and all of which led to deprivations of McDonnell's rights, privileges and immunities secured by the federal and state constitutions as well as federal and state laws.

a.  Violation and deprivation of constitutional rights as set out in this complaint.

b.  Inadequate training and instruction of employees of Defendants on the proper use of police power, proper investigations, proper initiation of criminal charges, accurate and truthful testimony in pending criminal cases and proper prosecution of alleged crime in the State of Texas and the State of New Mexico.

c.   Inadequate supervision of employees on the proper use of police power, proper investigations, proper initiation of criminal charges, accurate and truthful testimony in pending criminal cases and proper prosecution of alleged crime in the State of Texas and the State of New Mexico.

d.   Inadequate discipline of employees on the proper use of police power, proper investigations, proper initiation of criminal charges, accurate and truthful testimony in pending criminal cases and proper prosecution of alleged crime in the State of Texas and the State of New Mexico.

e.   Inadequate supervision, training, and retention with resulting poor personnel decisions as to employees regarding the proper use of police power, proper investigations, proper initiation of criminal charges, accurate and truthful testimony in pending criminal cases and proper prosecution of alleged crime in the State of Texas and the State of New Mexico.

f.   Abuse of police power and arrest power against McDonnell.

g.   Failure to avoid, failure to thereafter investigate, and failure to thereafter re-open the underlying investigation and failure to thereafter discipline law enforcement officers for improper conflicts of interest of interested law enforcement officers investigating crimes allegedly committed by McDonnell.

h.   Failure to take remedial action against a known pattern of misconduct by law enforcement officers, both remedial actions as to the law enforcement officers and remedial action as to the underlying criminal case in which the misconduct has occurred.

i.   Failure to take significant steps to prevent a known risk of wrongful arrest, prosecution, and imprisonment.

j.   Failure to take significant steps to prevent and remedy false testimony given by law enforcement officers in the ongoing investigation of a case being prosecuted by the State of Texas.

k.   Taking aggressive law enforcement actions without first having met the standard of probable cause.

l.  Tolerance of misconduct of law enforcement officers and failing to follow up and properly and thoroughly investigate misconduct of law enforcement officers resulting in the wrongful prosecution of Plaintiff.

m.   Deliberate indifference to and conscious disregard of a high risk that law enforcement officers would improperly use their influence as law enforcement offices or fail to protect against such use of improper influence in violation of Plaintiff's protected rights.

28. These actions, omission, policies, practices, procedures, patterns, decision, orders, and customs of Defendants were the cause of the constitutional and other violations described in

this Complaint.  Defendants acted in concert, were joint tortfeasors and are jointly and severally liable to Plaintiff.

29. The conduct alleged in the Complaint violated clearly established Federal and state protected rights of which every reasonable competent official in Defendants' respective positions would have, or should have, been aware.  As to Defendants' actions and omissions toward Plaintiff, there was no objectively reasonable reliance on existing law.

## V. Factual Allegations Common to All Counts

### 1. McDonnell Makes Plans to Visit His Daughter

30. In 2016 McDonnell was working for Sagecore Technologies, a computer technology start-up in Albuquerque, and about to sign a contract for a 15% stake in the company in exchange for his services managing the company when he was arrested due to Glover's false charges.   At the time the company had five employees, and McDonnell was to be head of sales and marketing, hiring, and corporate planning.

31. Mirna was living with McDonnell's ex-wife, Jennifer Glover, in McAllen, Texas.  In the summer of 2016 McDonnell contacted Glover to make plans to travel to McAllen to visit his daughter in October of 2016.

32. Glover has had decades of alcohol and drug abuse issues, and is emotionally disabled, receiving aid from the state as well as a caretaker because she is unable to work.  Texas Child Protective Services has previously removed Mirna from Glover's care for failure to provide a safe environment.  From 2011 to 2012 Glover went to a rehabilitation program and then was living on the streets of Austin, Texas.

33. Two weeks before McDonnell's visit, Glover told him that he should stay with her

and Mirna in Glover's two-bedroom apartment.  She also told McDonnell that she was interested in reconciling their marriage, even though they had been divorced for almost 10 years.

34. When McDonnell stated that getting back together was not possible Glover became irate and upset and said it might be better if McDonnell did not visit his daughter at all.

35. A few days later, Glover called McDonnell and stated that he could still come and visit his daughter.  McDonnell went ahead with the visit, despite his apprehension, because of his goal of renewing his relationship with his daughter.

**2.  McDonnell's Visit with His Daughter in McAllen**

36. On October 27, 2016, McDonnell arrived in McAllen for his six-day visit with his daughter Mirna, and, as he and Glover had agreed, stayed in a spare room in Glover's apartment. McDonnell spent every day with Mirna, including Halloween.

37. The visit was a complete success as far as McDonnell and his daughter were concerned.  Mirna was completely at ease and happy with McDonnell the entire time.

38. As postings on Facebook show, Mirna obviously enjoyed the entire visit, asking at the end of the visit when McDonnell could visit again.  There was absolutely no indication of any abuse or even friction between McDonnell and Mirna.  Glover's mother said that she'd never seen her granddaughter so happy as Mirna was during the entire time of McDonnell's visit.

39. Glover told McDonnell's mother that Mirna had been happy and well-behaved from the moment McDonnell arrived until he left, and that Mirna was looking forward to more visits from McDonnell.  Glover also stated that Mirna was very sad to see McDonnell leave to go back to Albuquerque.

40. Soon after McDonnell arrived, McDonnell spent several hours playing with Mirna at

the apartment.  When McDonnell and Mirna were playing, Glover's state-provided care-giver told McDonnell that she "wished her daughter and her son had that kind of relationship with their Dad."

41. On Halloween, the second to last day of McDonnell's visit, Mirna was stung by a wasp.  McDonnell took her to the school nurse, and Mirna wanted McDonnell to carry her the rest of the day.  That night, for Halloween, Mirna had McDonnell carry her from house-to-house for trick-or-treating because she "could not walk."

42. On November 1, McDonnell's last day in McAllen, Mirna asked to take the day off school to spend with McDonnell, and the two spent the entire day together.   McDonnell then returned to Albuquerque, happy with the results of his visit.

### 3.  McDonnell's Engagement Announcement Triggers Glover's False Police Report

43. Upon his return to Albuquerque, McDonnell became engaged.  McDonnell posted a picture of his fiancé and himself on his Facebook account announcing his engagement.  Glover saw this posting on or about November 25, 2016.

44. Glover immediately called McDonnell's mother, Bridget Griggs, in a rage about McDonnell's engagement.  Griggs describes Glover as "livid" over the engagement announcement.  Griggs asked Glover if "anything had happened when Neal was there – did they fight or argue in front of her."  Glover responded "No, it all went well for the first visit."

45. After berating Griggs, Glover then called McDonnell to scream at him about his getting engaged.  After several minutes of abusing McDonnell over the phone, she yelled that it "wouldn't matter who McDonnell was with in 10 or 20 years" and then she hung up on him.

46. Less than 10 days later, on December 5, 2016, Glover filed a false police report with

the McAllen Department of Public Safety falsely alleging that McDonnell had sexually molested his daughter during his visit.

47. The case was referred to the unit of the McAllen Police Department that handles sexual crimes against minors.  That unit declined to take up the case.

48. Three facts that the McAllen Police Department knew or should have known about may have been what caused the Crimes Against Minors unit to decline the case.  First, Glover has a history of filing false claims of sexual assault, some of which claims painted Mirna as the victim.  In each of those occasions, after a proper investigation no charges were filed against the individuals who were the subjects of Glover's false claims.

49. Second, Glover's sworn statements in the case file contradicted one another and thus all her statements about the case could not have been true.

50. Third, there was an utter lack of any forensic evidence indicating any sexual assault of the kind described by Officer Fuentes in his report.

51. None of these factors mattered to Fuentes, who not only took up the case but pursued it to such an extreme that he withheld exculpatory evidence and manipulated the forensic reports to ensure that McDonnell was indicted and prosecuted despite the total lack of evidence.

**4.  Fuentes Pursues McDonnell and Violates His Constitutional Rights**

52. Fuentes' investigation into Glover's false charges was incomplete, unprofessional, and showed a willful disregard by Defendants for McDonnell's rights, privileges and immunities guaranteed to him by the United States Constitution.

53. For example, on December 8, 2016, Mirna texted McDonnell and attempted to call him twice, saying that she missed him.  Those texts would have been available to Fuentes if he

had asked for any communications between Mirna and McDonnell.  But Fuentes did not ask for any such communications.

54. On December 13, 2016, SANE nurse E. Garcia examined Mirna and produced a Forensic Examination Report that stated the exam "did not show any trauma to any of the victim body parts."   In other words, the hard evidence contradicted Glover's statements.  A copy of that forensic report was provided to Officer Esteban Fuentes on December 14, 2016.   Fuentes ignored the results of that report in his pursuit of McDonnell.

55. On December 18, 2016, Officer Fuentes contacted Glover to obtain a statement. Fuentes states in his report that Glover told Fuentes she wanted to press charges against McDonnell and would meet with Fuentes on December 26, 2016 to provide a statement.

56. Fuentes apparently did not wait for a sworn statement from Glover before taking action.  Without getting a statement from Glover, he prepared a complaint seeking McDonnell's arrest for aggravated sexual assault.  A warrant for McDonnell's arrest was signed <u>before</u> December 26, 2016, when Fuentes was to obtain a statement from Glover.

57. Thus even though there was no SANE report, forensic report, or forensic evidence to support any charges against McDonnell, but Fuentes ignored the evidence and submitted a complaint that contradicted the forensic evidence.

58. Based on Fuente's complaint containing manipulated evidence a Grand Jury handed down four counts against McDonnell.  These were:  Count 1 - intentionally or knowingly cause the penetration of the sexual organ of a child younger than 14 years of age by defendant's finger; Count 2 - intentionally or knowingly cause the penetration of the sexual organ of a child younger than 14 years of age by defendant's finger (sic); Count 3 - with the intent to arouse or ratify the sexual desire of the defendant, the defendant cause a child younger than 17 years of age to

engage in sexual contact by causing the child to touch the genitals of the defendant; and Count 4 - with the intent to arouse or gratify the sexual desire of the defendant, expose the defendant's genitals knowing that a child of less than 17 years of age was present.

59. Following the indictment, Fuentes moved quickly to procure an arrest warrant and extradition order. Fuentes attempted to get an extradition order to retrieve McDonnell from Albuquerque on December 26 and 27, 2016, but was unable to speak with anyone at the DA's office.

60. On January 3, 2017, Fuentes again contacted the DA's office and this time was able to obtain the extradition order to arrest McDonnell in Albuquerque, New Mexico.

61. When McDonnell was arrested in Albuquerque, the arresting Federal Marshal stated to McDonnell that had looked through McDonnell's social media, and it was clear from the photos of McDonnell with his daughter that nothing like what Glover falsely alleged could have happened. The Marshal informed McDonnell that he "could fight these charges."

62. The Marshal also told McDonnell that it was "really strange" that they were going out to detain McDonnell, because the usual procedure was to treat the extradition order as a bench warrant and wait until McDonnell was picked up in a traffic stop. But in this case, the Marshall said, "the McAllen Police Department called our chief and told us to pick you up right away" and not to wait for a bench warrant.

63. McDonnell was arrested at his home in Albuquerque on January 26, 2017, and was held in the Bernalillo County, New Mexico jail for 18 days awaiting extradition to Texas. He was extradited to McAllen, Texas on February 13, 2017.

64. McDonnell was held in the Hidalgo County jail for five months, from February 13, 2017 until July 13, 2017. During his entire illegal incarceration, McDonnell was never

interviewed or questioned by Fuentes or any other investigating officers.

65. At some point during McDonnell's incarceration, he was charged with an additional felony count of aggravated sexual assault of a minor (the "secret felony charge"). On this secret charge McDonnell was never read his rights, afforded an attorney, provided a bond hearing, or allowed the opportunity to post a bond. When the other charges were dropped, McDonnell was held an additional three days in the McAllen County Jail on this secret felony charge.

66. While McDonnell was incarcerated, Glover's obsession with him continued. Each time McDonnell was transported to and from court regarding the sexual assault charges, in handcuffs, orange jumpsuit, and hand socks, Glover came to every one of these hearings, taking copious notes.

**5. Glover's Harassment of McDonnell through Filing a Restraining Order**

67. On March 8, 2017, in the midst of McDonnell's illegal incarceration, Glover filed a restraining order against McDonnell. Glover failed to appear for any of the hearings on the restraining order. The court reset hearings on the temporary restraining order on March 21, 2017; April 13, 2017; May 10, 2017; and June 20, 2017.

68. These trips caused extreme emotional and personal trauma for McDonnell, because each trip to court was another chance that the inmate population of the county jail could discover the charges for which McDonnell was incarcerated.

69. Only on July 21, 2017 – eight days after McDonnell was released – did Glover finally allow her suit for a protective order to be dismissed.

70. The restraining order appears to have been a way for Glover to both harass McDonnell and attempt to bolster her false claims against him without actually having to face

questioning under oath.

### 6.  All Charges Against McDonnell are Dropped and the Court Apologizes to McDonnell

71. Through the heroic efforts of his court-appointed counsel, all the criminal charges (except for the secret felony charge) were dropped.  At the hearing dropping the charges, on or about July 10, 2017, the Court first told the Assistant District Attorney's that "you really need to read the file before bringing a case like this," and then, after apologizing to McDonnell for "wasting five months of your life" the Court dismissed all charges.

72. During the entire incarceration ordeal, McDonnell lived in daily fear for his life and safety, should the other inmates learn of the nature of the charges against him.  During one trip to the court for a hearing, the judge inadvertently mentioned in open court that a particular inmate was charged with child sexual assault.  When the group was returned to the jail, that inmate was assaulted by the other inmates.  It would be of little comfort to McDonnell that the charges were false if the other prisoners were to learn the nature of the charges against him.

73. After the known charges were dismissed by the Court, McDonnell was to be released in July 10, 2017.  The Hidalgo County Sheriff's Office, however, refused to release McDonnel because their records showed the additional secret felony charge for sexual assault of a minor under a separate cause number.

### 7.  McDonnell's Release is Delayed Due to the Secret Felony Charge

74. McDonnell was held an additional three days in the Hidalgo County Jail on this secret charge, creating further emotional and mental trauma because of the uncertainty of what would happen on this additional charge.

75. McDonnell was never afforded an attorney, allowed a hearing to set a bond or allowed any of his other constitutional rights for the second, secret felony charge.  There was apparently no grand jury process involved on the secret felony charge.

76. McDonnell was finally released on July 13, 2017, and, now without a job, an apartment, a car, or a finance he went to El Paso to stay with his mother while he began to rebuild his life.  McDonnell eventually returned to Albuquerque and worked as a waiter until he once again found employment in the computer and electronics fields.

**8.  Fuentes and His Co-Conspirators Violate McDonnell's Right to Access to the Courts by Derailing His Efforts to File Criminal Charges Against Glover**

77. On or about April 20, 2018, some ten months after his release, McDonnell contacted the McAllen Police Department to file a criminal complaint against Glover for filing a false police report.  McDonnell spoke to an Officer Rodriguez regarding pressing charges against Glover pursuant to Texas Penal Code Section 37.08.  Officer Rodriguez at first told McDonnell that "the case is closed."

78. Officer Rodriguez asked McDonnell for evidence that Glover had lied and told McDonnell that he would have to provide documentary evidence before the McAllen Police would open an investigation – a standard in stark contrast to that offered to Glover when she swore out her false complaint, where the evidence actually contradicted Glover's statements.

79. On or about May 19, 2018, McDonnell again called the McAllen Police Department to file a criminal complaint against Glover for filing a false police report. He spoke to an Officer Salazar who, surprisingly, told McDonnell that McDonnell would have to talk to Fuentes before he could file such a report.

80. On May 20, 2018, McDonnell was shocked to receive a call on his cell phone from

Officer Fuentes, the same officer who had "investigated" Glover's false charges against McDonnell. Fuentes told McDonnell that he could only file the charge through the District Criminal Attorney of Hidalgo County, and that, once McDonnell had the charge filed, Fuentes himself would handle the matter "personally." McDonnell followed up with the Hidalgo County Criminal District Attorney's Office and was told by that office that what Fuentes had told him was incorrect.

81. The conspiracy had the desired effect, as McDonnell ceased his efforts to file the criminal charges against Glover.

### 9. Summary of Violations of McDonnell's Rights

82. These violations of McDonnell's constitutional and civil rights had a devastating impact on his life. He lost his job and his promotion; was evicted from his apartment; had his car repossessed; had his engagement broken by his fiancé; became financially destitute; and suffered the emotional and physical torment of being in an open jail population in Hidalgo County with the charge of child sexual assault filed against him.

83. McDonnell's civil rights were violated by the Defendants acting individually and in concert, in not allowing McDonnell counsel for at least one of the charges filed against him; holding McDonnell on a felony charge without reading him his Miranda rights; ensuring that McDonnell's case was not properly investigated; manipulating evidence; obstructing justice; extraditing McDonnell from New Mexico in violation of practice; and obstructing McDonnell's efforts to file criminal charges against Glover for filing a false police report. Such actions were in violation of the Constitution and laws of the United States, the State of Texas, and the State of New Mexico.

84. Defendants further conspired to violate McDonnell's rights and to harm McDonnell by arresting and incarcerating McDonnell, and to continue his incarceration unreasonably, which actions resulted in harm to McDonnell's reputation, mental and emotional health, finances, and personal life.

85. Defendants the City of McAllen, Texas, Hidalgo County, Texas, and Bernalillo County, New Mexico, and their subdivisions the Hidalgo County Sheriff's Office, the Bernalillo County Sheriff's Office, and the McAllen Police Department lack proper training in First Amendment rights, Fourteenth Amendment rights, and Fourth Amendment search and seizure procedures and the preservation of and integrity of evidence.

86. Defendants the City of McAllen, Texas, and Hidalgo County, Texas, and their subdivisions the Hidalgo County Sheriff's Office, the Hidalgo County Criminal District Attorney's Office, and the McAllen Police Department refused to properly investigate the gross violations of McDonnell's rights, or to allow McDonnell to file a criminal complaint against Glover.

87. The actions of Fuentes and the co-conspirators were conducted with the express or implied authority of and were acting under express or implied policies of Defendants the City of McAllen, Texas and Hidalgo County, Texas, and their subdivisions the Hidalgo County Sheriff's Office and the McAllen Police Department, and their respective Chief of Police and County Sheriff.

88. At all times material thereto, Defendants were acting under color of state and local law when they deprived McDonnell of his rights, privileges and immunities secured by law and the Constitution of the United States.

89. Defendants' actions were intentional, negligent, done in reckless disregard for, or

deliberate indifference to McDonnell's civil and constitutional rights.  These violations were the proximate or producing cause of McDonnell's damages.

90. The official policies, custom and practices, along with the Defendants' deliberate indifference to McDonnell's civil and constitutional rights, were a moving force which caused and resulted in the illegal seizure of McDonnell's person, the presentation of false and manipulated evidence, and the false arrest, extradition, and imprisonment of McDonnell, and the proximate damages caused to McDonnell.

91. Defendants acted so egregiously in conspiring against McDonnell's civil and constitutional rights that a jury may properly infer that Defendants' actions constitute policies, customs or practices that violate the civil and constitutional rights of McDonnell.

92. Defendants acted with malice in that they exhibited a gross indifference or reckless disregard for the civil and constitutional rights of McDonnell, amounting to wanton and willful actions.

## VI. INJUNCTIVE RELIEF

93. Plaintiff prays for injunctive relief such that the officers who participated in these acts against Plaintiff will be investigated or disciplined or trained properly.  In addition, Plaintiff seeks injunctive relief as to the respective Sheriffs and departments requiring them to establish policies and procedures to adequately investigate their respective employees, properly train their respective deputies, employees, or prosecutors, properly supervise their respective deputies, employees, or prosecutors, and change their respective policies and procedures to prevent another occurrence of the events that damaged McDonnell.

94. Plaintiff will establish that the continued violation of Plaintiff's civil rights by the Defendants in maintaining their current practices will create imminent and irreparable harm in

that it is impossible to truly measure the value of a First Amendment freedom of expression or the right to redress grievances to the government and thus the harm cannot be undone by monetary damages. *See*, *e.g.*, *Elrod v. Burns*, 427 U.S. 347 (1976).

95. Thus any remedy at law is inadequate and illusory because damages are not subject to exact calculation and the loss of said freedoms is priceless and effective relief cannot be obtained without the necessity of filing hundreds or even thousands of individual lawsuits. Filing such lawsuits is prohibitive because of the costs of litigating each such case with its respective benefits for each Plaintiff. The injuries suffered by Plaintiff and all similarly situated persons outweighs any injury that would be sustained by Defendants as a result of any entry of injunctive relief.

96. The granting of injunctive relief will have a positive effect on public policy and the public interest in that it will give rise to greater compliance with citizens' freedoms while at the same time reducing the possibility for the unwarranted filing of multiple, redundant charges, failing to allow a charged person representation on charges against him, and failing to properly investigate charges against him.

97. Furthermore, the public interest will be furthered in protecting First, Fourth, and Eight amendment rights by enjoining Defendants from retaliating against citizens who complain of civil rights violations or who attempt to file charges for filing false criminal claims against him.

98. Pursuant to Section 1983 of the Federal Code, and the traditional principles of equity, Plaintiff prays for injunctive relief to prohibit Defendants from violating the Constitutional and statutory rights guaranteed to all citizens of the United States and for continuing oversight and compliance review by this Court until the Court has determined that its injunctive orders have

been fully implemented.

## VII. CAUSES OF ACTION

### Count I:
### Claim Pursuant to 42 U.S.C. § 1983 for Malicious Prosecution, False Arrest, Use of Unreliable and Fraudulent Investigatory Techniques, Procurement of Unreliable and Fabricated Evidence, and Wrongful Imprisonment.

99. Plaintiff incorporates all prior and subsequent paragraphs of this Complaint as if fully set forth herein.

100. The illegal arrest, illegal confinement, fraudulent investigations, and malicious prosecution of Plaintiff were deliberately and intentionally brought about by Defendants. The arrest, confinement, and prosecution were the obvious and intended results of the investigation in a manner designed to prove a case against Plaintiff despite his actual innocence, which was known or should have been known to the Defendants.

101. In their investigation, Defendants procured demonstrably unreliable and false evidence. Additionally, Defendants utilized information obtained in a manner that was inherently unreliable. For example, Officer Fuentes allowed a biased, interfering, and mentally unstable mother to be present during the questioning of Mirna, and to interfere with and otherwise direct the investigation.

102. Defendants maintained policies and practices which ignored the constitutional obligations of the named law enforcement entities and persons to provide evidence of innocence to the defense. The policies and practices in fact discouraged the obtaining or providing of exculpatory evidence and permitted schemes and faulty investigative techniques, such as the ones utilized in this case, in which no proper investigation was performed before Defendants

obtained an arrest warrant for Plaintiff, in violation of good law enforcement practices and procedures.

103. The actions of Defendants constituted unconstitutional seizures of Plaintiff in violation of the Fourth and Fourteenth Amendments to the United States Constitution.  The actions of the Defendants mentioned under this Count resulted in multiple invasions of Plaintiff's rights to due process of law under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and subsequently resulted in the cruel and unusual punishment of Plaintiff under the Eight and Fourteenth Amendments to the United States Constitution.

104. The actions of the Defendants recounted in this Count also resulted in a violation of Plaintiff's right to the effective assistance of counsel under the Sixth and Fourteenth Amendments because the Defendants interfered with defense counsel's ability to provide constitutionally effective assistance, and because Plaintiff was simply not provided the constitutionally required access to counsel for at least one of the criminal charges against him.

105. The actions of the Defendants described in this Count interfered with Plaintiff's fundamental constitutional rights under the Fourth, Fifth, Sixth, Eight, and Fourteenth Amendments to the United States Constitution.  All of these constitutional rights are protected by 42 U.S.C. § 1983.  The action of the Defendants mentioned in this Count proximately and directly caused Plaintiff grievous and permanent injury, including nearly six months of incarceration and the attendant loss of freedom, companionship, and income; and the attendant infliction of mental and physical pain, suffering mental and emotional anguish, fear, including the fear of being incarcerated for the rest of his life for a crime he did not commit, and the fear of suffering physical harm by his fellow inmates should they discover the nature of the charges against him.

106. The Defendants actions were deliberate, reckless, wanton, or cruel, justifying the award of punitive damages.


**Count II:**
**Claim Pursuant to 42 U.S.C. § 1983 for Conspiracy (Jennifer Glover, Officer Fuentes, Officer Rodriguez, Officer Salazar, City of McAllen, Texas, and Hidalgo County, Texas, along with co-conspirators in the Hidalgo County Sheriff's Office, the Bernalillo County Sheriff's Office, the McAllen Police Department)**

107. Plaintiff incorporates all prior and subsequent paragraphs of this Complaint as if fully set forth herein.

108. Defendants Glover, Fuentes, and the other Defendants, together and under color of state law, reached an understanding, engaged in a course of conduct, and otherwise conspired among and between themselves to deprive Plaintiff of his constitutional rights, including his right to free association and familial privacy, to be free from unreasonable arrest and seizure, to be free from wrongful conviction and imprisonment, to be free from malicious prosecution, to fair trial and fair access to the courts, to due process of law, to counsel, to be free from cruel and unusual punishment and all basic rights of American citizens faced with criminal sanctions.  The conspiracies deprived Plaintiff of rights protected by the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

109. The conspiracy was also intended to and had the effect of depriving Plaintiff of his rights to association which his family, including his natural daughter, Mirna, and to familial privacy, in violation of their rights under the First, Ninth, and Fourteenth Amendment to the United States Constitution.   Mirna was known to at least some of the co-conspirators as being Plaintiff's daughter.

110. The Defendants named in this Count, along with unnamed co-conspirators in the Hidalgo County Sheriff's Office, the Bernalillo County Sheriff's Office, the McAllen Police Department, committed the overt acts set forth in the factual statements above.  The overt acts involved the wrongful arrest, prosecution, imprisonment and deliberately indifferent investigation of patently false allegations against Plaintiff.  It also included the manufacture of knowingly false and knowingly unreliable evidence which was intended to inculpate Plaintiff; the suppression of exculpatory evidence, such as Plaintiff's own testimony and communication between Plaintiff and Mirna; and the filing of false, misleading, and unreliable reports as part of the investigation.  The conspiracy was designed to prove a case against Plaintiff despite his actual innocence which was or should have been known to Defendants.

111. The conspiracies and overt acts were continuing in nature and caused Plaintiff constitutional deprivations, injuries, pain, suffering, mental and emotional anguish, incarceration, imprisonment, humiliation, and loss of freedom, companionship and income.  Plaintiff also suffered permanent damage to his personal and professional reputation.

112. Because the actions of Defendants were deliberate, reckless, wanton, or cruel, punitive damages are justified.


**Count III:**
**Claim Under 42 U.S.C. § 1983 for Suppression of Exculpatory evidence (Fuentes, Glover, Other Defendants)**

113. Plaintiff adopts by reference all prior and subsequent paragraphs of this Complaint as if fully set forth herein.

114. Defendants, along with other investigative and prosecutorial personnel, together and under color of state law, kept from Plaintiff and his counsel and the grand jury testimony

exculpatory information, including information supporting his innocence such as the actual reports provided by the SANE investigators, and the fact that Glover had a history of making similar sexual abuse claims against other adults, which would have cast doubt on the reliability of the primary witnesses against Plaintiff.

115. The withholding of various types of exculpatory evidence was in violation of Plaintiff's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as protected by 42 U.S.C. § 1983.  The withholding of exculpatory evidence proximately and directly led to Plaintiff's incarceration for almost six months, as well as leading to his damages.

116. Plaintiff is therefore entitled to monetary relief.  Because the actions were deliberate, reckless, wanton, or cruel, punitive damages are justified.


**Count IV:**
**42 U.S.C.  § 1983 Claim Against the City of McAllen, Texas, Bernalillo County, New Mexico and Hidalgo County, Texas.**

117. Plaintiff adopts by reference all prior and subsequent paragraphs of this Complaint as if fully set forth herein.

118. The City of McAllen, Texas, Hidalgo County, Texas, and Bernalillo County, New Mexico had in effect, both before and at the time of the events alleged in this Complaint, policies, practices, and customs which operated to deprive Plaintiff of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as protected by 42 U.S.C. § 1983.

119. The City of McAllen, Texas, Hidalgo County, Texas, and Bernalillo County, New Mexico are accountable under 42 U.S.C. § 1983 because they established policies and practices

that were intended to and did encourage, endorse, and reward their agents and employees for violating the constitutional rights of Plaintiff and other similarly situated persons. At a minimum, the supervisors and the governmental units were deliberately indifferent to such constitutional violations.

120. The unconstitutional policies and practices include, but are not limited to:

a. a policy, practice and custom of failing to properly train and supervise officers in the techniques of reliably investigating serious crimes.

b. a policy, practice and custom of using interrogation techniques which, through having and increased likelihood of obtaining information from persons, had a great likelihood of obtaining false and unreliable information from suspects and witnesses;

c. a policy, practice and custom of suppressing, destroying, altering, or otherwise secreting exculpatory evidence from the defense, barring such evidence from the grand jury, and limiting defense access to meaningful evidence;

d. a policy, practice and custom of failing to adequately supervise law enforcement officers known by it to have falsely testified, and known by it to have destroyed or changed evidence;

e. a policy, practice and custom of failing to discipline officers who violate the Constitution or law or otherwise transgress the rights of criminal suspects during their investigations;

f. a policy, practice and custom of being deliberately indifferent to the violation by law enforcement officers of the rights of the accused;

122. The City of McAllen, Texas, Hidalgo County, Texas, and Bernalillo County, New Mexico had acquired, before and during the time periods of Plaintiff's prosecution, each of the policies, practices, and customs listed in this Count.

123. Additionally, The City of McAllen, Texas, Hidalgo County, Texas, and Bernalillo County, New Mexico acted in concert with the McAllen Police Department, the Hidalgo County Sheriff's Office, and the Bernalillo County Sheriff's Office in a collaborative effort to adopt and perpetuate the unconstitutional polices, practices, and customs of each other.

124. These interrelated policies, practices, and customs, separately and together, were implemented intentionally to deprive possible targets of criminal investigations of their constitutional rights, or, at the very least, were implemented with a deliberate indifference to the rights of possible targets of criminal investigation and were  a direct and proximate cause of the Constitutional violations and injuries, as set forth in Counts I, II, III, IV, and V of this Complaint.


**Count V:**
**Claim for Negligence Resulting in Wrongful Incarceration and Continued Detention**
**(Fuentes, Glover, City of McAllen, County of Hidalgo, McAllen Chief of Police and Hidalgo County Sherriff)**

125. Plaintiff adopts by reference all prior and subsequent paragraphs of this Complaint as if fully set forth herein.

126. If Defendants and other unnamed law enforcement and civilian co-conspirators did not act intentionally, deliberately and in bad faith, they did put together against Plaintiff an unreliable case through negligent investigation, irresponsible procurement and modification of evidence, and inadequate training and supervision.  The City of McAllen, Texas and the County of Hidalgo, Texas are responsible for this negligence under the doctrine of respondeat superior.

127. The Defendants named in this Count are responsible for negligence in causing the incarceration and continued detention of an innocent person, Neal McDonnell.

128. In addition to owing Plaintiff a duty of care in the period of time leading up to his prosecution, they had a duty to inquire – especially upon the receipt of information casting doubt on whether any sexual assault of Mirna McDonnell ever occurred – regarding the correctness of the investigation and incarceration.

129. The negligence in causing the arrest, incarceration, and continued detention of Plaintiff, despite the existence of evidence pointing toward innocence, proximately and directly caused Plaintiff grievous personal injury, including nearly six months of incarceration and the attendant loss of freedom, companionship and income, and the attendant mental and physical pain, suffering, anguish, fear, including the fear of spending the rest of his live in prison and dying in prison despite his innocence, and the fear of physical violence should the jail population discover the charges against him. Plaintiff also suffered permanent damage to his personal and professional reputation.

130. Because Defendants' actions were deliberate, reckless, wanton, or cruel, Plaintiff is entitled to punitive damages.

## Count VI:
## Claim Under Texas Common Law for False Arrest

131. Plaintiff adopts by reference all prior and subsequent paragraphs of this Complaint as if fully set forth herein.

132. Defendants, acting in concert each with the other, did willfully and unlawfully and under color of legal authority, illegally arrest or permit the illegal arrest of Plaintiff and detained him against his will without due and legal process. As a result of the false arrest, the Defendants caused Plaintiff grievous personal injury, including six months of incarceration and the attendant loss of freedom, companionship and income, and the attendant mental and physical pain, suffering, anguish, fear, including the fear of spending the rest of his live in prison and dying in prison despite his innocence, and the fear of physical violence should his the jail population discover the charges against him. Plaintiff also suffered permanent damage to his personal and professional reputation.

133. Because Defendants' actions were deliberate, reckless, wanton, or cruel, Plaintiff is entitled to punitive damages.

**Count VII:**
**Claim Under Texas Common Law for Malicious Prosecution**

134. Plaintiff adopts by reference all prior and subsequent paragraphs of this Complaint as if fully set forth herein.

135. Defendants, acting in concert each with the other, did willfully, maliciously and unlawfully and under color of legal authority, cause Plaintiff to be falsely prosecuted in court and as a result of this prosecution Plaintiff suffered grievous personal injury, including six months of incarceration and the attendant loss of freedom, companionship and income, and the attendant mental and physical pain, suffering, anguish, fear, including the fear of spending the rest of his live in prison and dying in prison despite his innocence, and the fear of physical violence should his the jail population discover the charges against him.  Plaintiff also suffered permanent damage to his personal and professional reputation.

136. Because of the malicious, willful, and reckless nature of Defendants' actions Plaintiff is entitled to punitive damages.

**Count VIII:**
**Failure to Provide Notice of Hearing and Opportunity to be Heard**

137. Plaintiff adopts by reference all prior and subsequent paragraphs of this Complaint as if fully set forth herein.

138. Parties whose rights are to be affected are entitled to be heard.  The notice of hearing and the opportunity to be heard must be granted at a meaningful time and in a meaningful

manner.  The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions.  The purpose of this requirement is not only to ensure abstract fair play to the individual.  Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment.

139. Defendants violated Plaintiff's right to notice of hearing and opportunity to be heard on at least one felony charge arising out of the same set of circumstances and occurrences as the known felony charges which were dismissed in their entirety by the state court.

140. Defendants, acting in concert each with the other, did willfully, maliciously and unlawfully and under color of legal authority, prevented Plaintiff from receiving notice and an opportunity to be heard on at least one felony charge pending against him for more than six months, and as a result of this failure to provide notice and opportunity to be heard Plaintiff suffered grievous personal injury, including incarceration and the attendant loss of freedom, companionship and income, and the attendant mental and physical pain, suffering, anguish, fear, including the fear of spending the rest of his live in prison and dying in prison despite his innocence, and the fear of physical violence should his the jail population discover the charges against him.  Plaintiff also suffered permanent damage to his personal and professional reputation.

141. Because of the malicious, willful, and reckless nature of Defendants' actions Plaintiff is entitled to punitive damages.

**Count IX:**
**Failure to Provide Counsel in Violation of the Sixth and Fourteenth Amendments to the United States Constitution**

142. Plaintiff adopts by reference all prior and subsequent paragraphs of this Complaint as if fully set forth herein.

143. Defendants failed to provide counsel to Plaintiff on at least one of the charges brought against him.  Once the known charges were dismissed, the Hidalgo County Sherriff refused to release Plaintiff, asserting there was still at least one felony charge pending against him arising out of the same circumstances as the known charges dismissed by the state court. Defendants failed to inform Plaintiff of his rights under this charge, failed to provide him counsel, and held him in the Hidalgo County Jail for an additional three days because of these charges hitherto unknown to Plaintiff.

144. Defendants, acting in concert each with the other, did willfully, maliciously and unlawfully and under color of legal authority, prevented Plaintiff from receiving access to counsel, and as a result of this lack of access to counsel Plaintiff suffered grievous personal injury, including incarceration and the attendant loss of freedom, companionship and income, and the attendant mental and physical pain, suffering, anguish, fear, including the fear of spending the rest of his live in prison and dying in prison despite his innocence, and the fear of physical violence should his the jail population discover the charges against him.  Plaintiff also suffered permanent damage to his personal and professional reputation.

145. Because of the malicious, willful, and reckless nature of Defendants' actions Plaintiff is entitled to punitive damages.

### Count X:
### Section 1983 Conspiracy Claim that Fuentes, Rodriguez, and Salazar Conspired to Deprive McDonnell of His Constitutional Right of Access to the Courts

146. Plaintiff adopts by reference all prior and subsequent paragraphs of this Complaint as if fully set forth herein.

147. When McDonnell tried to file a criminal charge against Glover for filing a false police report, Fuentes, Rodriquez, and Salazar conspired to deprive her of a constitutional and federal right of access to the Courts.   Fuentes furthered the conspiracy by misdirecting McDonnell so that he could not file the charge; Rodriguez attempted to thwart McDonnell's filing by saying the case was already closed and that he did not have any proof to file a claim, and Rodriguez told McDonnell he could only file the claim after talking with Fuentes.

148. McDonnell was injured by these overt acts in that he was not able to file the criminal complaint, and thus unable to take that step to clear his name of the false charges.

149. McDonnell has a constitutional right to bring a § 1983 action for his false arrest and detention.   The right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.

## VIII. CLAIMS FOR DAMAGES

150. The actions of Defendants deprived Plaintiff of his civil rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution.   As a result of the actions and circumstances described above, Plaintiff has suffered injuries and damages but not limited to one or more of the following:

a. Past and future physical injuries and impairment;

b. Past and future pain and suffering;

c. Past and future mental anguish and humiliation;

d. Loss of time;

e. Physical discomfort or inconvenience;

f. Past and future economic losses including legal fees in connection with representation for the wrongful charges asserted against him.

151. The unlawful and reckless acts of the Defendants resulted in malicious prosecution, abuse of process, and false arrest.  The unlawful and reckless acts of the Defendants cause Plaintiff severe emotional distress, pain, humiliation, anguish, loss of companionship, and financial loss.  Plaintiff also lost his freedom and suffered permanent damage to his personal and professional reputation.

152. Defendants' conduct described above is the type of conduct for which the law, including 42 U.S.C. § 1983, allows the assessment of exemplary damages.  Accordingly, Plaintiff seeks punitive damages in an amount to be determined by the trier of fact.

## IX. JURY DEMAND

153. Plaintiff demands a jury trial under Federal Rule of Civil Procedure 38(b).

## X. ATTORNEY FEES

154. It was necessary for Plaintiff to engage the services of legal counsel to prosecute this claim for relief.  Upon Judgment, Plaintiff prays that the Court award Attorney fees and costs.

## XI. PRAYER FOR RELIEF

155. Wherefore, premises considered, Plaintiff respectfully prays that this Court will: Assume jurisdiction of this matter, case and controversy for a hearing on the merits; Award compensatory damages to Plaintiff, and against the Defendants, jointly and severally, in the amount of $20,000,000.00; Award punitive damages to Plaintiff, and against the Defendants, jointly and severally, in the amount of $5,000,000.00; Award to Plaintiff his costs and attorney

fees, pre-judgment and post-judgment interest, and all other relief the Court deems just and proper, and to which Plaintiff is entitled, at law or equity.

Respectfully submitted,

**The DeGroot Law Firm, PLLC**
3827 N. 10th St., Ste. 304
McAllen, Texas 78501
T:  (956) 627-2787
F:  (956) 627-4363
E: degroot@degrootlaw.org


/s/ David DeGroot___
DAVID DEGROOT
State Bar No. 24044444
Fed ID No. 784421
Attorney for Neal McDonnell